**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**HARTFORD DIVISION**

| | | | |
|---|---|---|---|
| IN RE: | ) | CASE NO. | 16-20653 (JJT) |
| | ) | | |
| MICHAEL HAMADI AND MIRNA Y. HAMADI, | ) ) | CHAPTER | 7 |
| DEBTORS. | ) ) | | |
| | ) | | |
| BONNIE C. MANGAN, CHAPTER 7 TRUSTEE, | ) ) | ADV. PRO. NO. | 17-02090 (JJT) |
| PLAINTIFF | ) ) | RE: ECF NOS. | 1, 15, 16, 20, 21, 27, 35 |
| V. | ) ) | | |
| UNIVERSITY OF CONNECTICUT, DEFENDANT. | ) ) ) | | |

**APPEARANCES**

Jeffrey Hellman, Esq.  
Law Offices of Jeffrey Hellman, LLC  
195 Church Street, 10th Floor  
New Haven, CT 06510

Counsel for Bonnie C. Mangan, Chapter 7 Trustee

Denise S. Mondell, Esq.  
Assistant Attorney General  
Office of the Attorney General  
55 Elm Street, 4th Floor  
P.O. Box 120  
Hartford, CT 06141

Counsel for the University of Connecticut

# MEMORANDUM OF DECISION GRANTING IN PART AND DENYING IN PART UCONN'S MOTION FOR SUMMARY JUDGMENT

I.  INTRODUCTION

Avoidance actions involving debtors making tuition payments on behalf of their children are currently percolating all throughout the United States bankruptcy and district courts.[1] The Defendant, the University of Connecticut ("UConn"), asks this Court to grant its Summary Judgment Motion ("Motion," ECF No. 15), dismissing the Complaint (ECF No. 1) filed by Bonnie C. Mangan ("Chapter 7 Trustee") in this Chapter 7 avoidance action. Pursuant to 11 U.S.C. §§ 548, 550, and 551 of the Bankruptcy Code, the Chapter 7 Trustee seeks to recover as constructive fraudulent transfers certain payments made by Michael Hamadi ("Debtor Husband") and Mirna Y. Hamadi (collectively, "Debtors") to UConn for college tuition and fees paid on behalf of their adult son Ali Hamadi ("Ali"). For the reasons stated herein, the Motion is **GRANTED** in part and **DENIED** in part.

II. JURISDICTION

This Court has jurisdiction under 28 U.S.C. § 1334(b) and may hear and determine this matter pursuant to the District Court's General Order of Reference dated September 21, 1984. UConn filed the instant Motion in this adversary proceeding, which the Chapter 7 Trustee asserts

---

[1] This is not the first time this Court has seen a trustee attempt to recover tuition payments a debtor parent made to a university on behalf of adult children. *See, e.g.*, *Novak v. Univ. of Miami (In re Demitrus)*, 586 B.R. 88 (Bankr. D. Conn. 2018); *Boscarino v. Bd. of Trs. of Conn. State Univ. Sys. (In re Knight)*, No. 15-21646 (JJT), 2017 WL 4410455 (Bankr. D. Conn. Sept. 29, 2017). *In re Knight* questioned whether the debtor parent received reasonably equivalent value in exchange for the tuition payments she made on her adult son's behalf. *See also Chorches v. Catholic Univ. of Am.*, No. 3:16-cv-1964 (MPS), 2018 WL 3421318, at *4 (D. Conn. July 13, 2018) (quoting *In re Knight*, 2017 WL 4410455, at *3, *6). The Court has also addressed state sovereign immunity in tuition claw back cases. *See In re Knight*, 2016 WL 6134143, at *2 (Bankr. D. Conn. Oct. 20, 2016). Courts throughout the country have seemingly struggled with the appropriateness of avoidance claims in this context, absent actual fraud, and Congress has noticed. *See, e.g.*, Jenna C. MacDonald, *Out of Reach: Protecting Parental Contributions to Higher Education from Clawback in Bankruptcy*, 34 Emory Bankr. Dev. J. 243 (2017); Andrew Mackenzie, *The Tuition "Claw Back" Phenomenon: Reasonably Equivalent Value and Parental Tuition Payments*, 2016 Colum. Bus. L. Rev. 924, 935 (2016). Absent a legislative fix, the Courts will continue to wrestle with the conundrums presented by these types of cases.

2

is a core proceeding pursuant to 28 U.S.C. §§157(b)(2)(A) and (H).[2] Venue is proper under 28 U.S.C. § 1409(a).

### III. FACTUAL BACKGROUND

The Court notes the following undisputed material facts.

The Debtors filed a voluntary petition (Case No. 16-20653 (JJT), ECF No. 1) for Chapter 7 bankruptcy protection on April 26, 2016 ("Petition Date"). Def.'s D. Conn. L. Civ. R.56(a)(1) Statement ¶ 1, ECF No. 16; Pl.'s D. Conn. L. Civ. R. 56(a)(2) Statement ¶ 1, ECF No. 21. On December 14, 2017, the Chapter 7 Trustee commenced this adversary proceeding by filing the Complaint.

Ali is the Debtors' son, who was an adult at all times relevant to this adversary proceeding. Def.'s Statement ¶ 3; Pl.'s Statement ¶ 3. Ali enrolled as an undergraduate student at UConn from August 2014 through September 2016. Def.'s Statement ¶ 4; Pl.'s Statement ¶ 4. UConn received tuition payments and fees in exchange for providing the value of a college education to Ali. Def.'s Statement ¶ 14; Pl.'s Statement ¶ 14.

UConn bills each of its students for tuition, fees, and expenses through an online portal called the Student Administration System ("Online Portal"). Def.'s Statement ¶ 5; Pl.'s Statement ¶ 5. UConn maintains the Online Portal, and every student possesses a unique NetID and password, giving him access to the Online Portal. Def.'s Statement ¶ 6; Pl.'s Statement ¶ 6. UConn treats every payment to a student's account as credit belonging to the individual student, rather than the third-party individual who made the payment on the student's behalf. Def.'s Statement ¶ 11; Pl.'s

---

[2] Although the Court treats the present matter as a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (H), the fraudulent transfer claim likely presents a *Stern* claim, depriving this Court of constitutional jurisdiction to enter final judgment. *See generally Stern v. Marshall*, 564 U.S. 462 (2011); *see also Exec. Benefits Ins. Agency v. Arkison*, 573 U.S. 25, 37 (2014). UConn denied this Court's authority to enter final judgment over the matter in its Answer to the Complaint ("Answer," ECF No. 11). In the event that this Decision is appealed to the District Court, then it may treat this Decision as proposed findings of fact and conclusions of law. Fed. R. Bankr. P. 8018.1.

Statement ¶ 11. If a student chooses to enroll in university classes at UConn, UConn thereafter retains the money paid and applies it to the student's tuition bill. Def.'s Aff. ¶ 9, ECF No. 15-2; Def.'s Statement ¶ 12; Pl.'s Statement ¶ 12. If a student chooses not to register for classes or withdraws from UConn, then UConn issues a refund directly to the student, regardless of who paid the money to the student account.[3] Def.'s Aff. ¶ 10; Def.'s Statement ¶ 13; Pl.'s Statement ¶ 13.

Ali held his student account ("Account") in the Online Portal in his name only. Def.'s Statement ¶ 7; Pl.'s Statement ¶ 7. The Debtors exerted no ownership or control over his Account and did not have any rights in or to the Account. Def.'s Statement ¶ 7; Pl.'s Statement ¶ 7. In the two years preceding the Petition Date, the Debtor Husband made four electronic payments to Ali's Account through the Online Portal.[4] Def.'s ¶ 8; Pl.'s ¶ 8. UConn retained and applied each of the pre-petition payments to Ali's tuition bill when he registered for 2014 fall semester, 2015 spring semester, and 2016 spring semester classes. Def.'s Statement ¶ 12; Pl.'s Statement ¶ 12. Although the payments made on August 25, 2014 and January 20, 2015 would have entitled Ali to a full refund, he would have only been entitled to a 90% refund on January 22, 2016 and a 25% refund on February 15, 2016 if he decided not to register for classes or to withdraw from UConn ("Refundable Payments"). *See* Def.'s Suppl. Aff. ¶ 5. Ali would have been unable to receive a refund for the remaining 10%, totaling $636.35, and 75%, totaling $2,393.81, respectively, even if he withdrew from UConn or did not enroll in classes ("Nonrefundable Payments"). *See id.* After the Petition Date, on September 1, 2016, the Debtor Husband made three additional electronic

---

[3] UConn administers refunds under a policy based upon the date the student withdraws. Def.'s Suppl. Aff. ¶ 4, ECF No. 35. Although a student is entitled to a 100% refund if he withdraws on the first day of classes, he is only entitled to a 90% refund if he withdraws during the first week of classes, a 60% refund if he withdraws during the second week of classes, a 50% refund if he withdraws during the third or fourth week of classes, and a 25% refund if he withdraws between the fifth and eighth week of classes. *Id.* at ¶ 5.

[4] The Debtor Husband made the following four pre-petition payments: 1) $3,922.00 on August 25, 2014; 2) $6,751.00 on January 20, 2015; 3) $6,363.50 on January 22, 2016; and 4) $3,191.75 on February 15, 2016, totaling $20,228.25. Def.'s Statement ¶ 8; Pl.'s Statement ¶ 8.

payments totaling $3,426.75 into Ali's Account via the Online Portal ("Post-Petition Payments"). Def.'s Statement ¶¶ 9–10; Pl.'s Statement ¶¶ 9–10.

UConn accepted the Refundable Payments and Nonrefundable Payments in good faith. Def.'s Statement ¶ 15; Pl.'s Statement ¶ 15. UConn only first learned that the Refundable Payments, Nonrefundable Payments, and Post-Petition Payments were in dispute in February 2017 when it received a demand letter from the Chapter 7 Trustee. Def.'s Statement ¶ 16; Pl.'s Statement ¶ 16.

In connection to this Motion, UConn submitted the Affidavit of Margaret Selleck, UConn's Bursar ("Affidavit," ECF No. 15-2). UConn also filed the Supplemental Affidavit in Support of the Motion sworn to by Nicole LeBlanc, Associate Bursar for UConn ("Supplemental Affidavit," ECF No. 35). The Chapter 7 Trustee does not dispute that the payments made to Ali's Account were treated according to the school policies laid out in the Affidavit and Supplemental Affidavit.

IV.   DISCUSSION

A. Summary Judgment Standard

It is well settled that summary judgment is "an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy[,] and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1). The Court shall grant a summary judgment motion if "the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a); *see also* Fed. R. Bankr. P. 7056. The burden is on the moving party, and the facts "must be viewed in the light most favorable to the opposing party." *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (internal quotations and citations omitted). When ruling on motions for summary judgment, "the judge's function is not himself to weigh the evidence and

5

determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986).

    B.  Constructive Fraudulent Avoidance Claims Asserted in the Complaint

The Court is tasked with determining whether there is a genuine issue of material fact regarding the alleged constructive fraudulent conveyances preventing the Court from granting summary judgment in UConn's favor. The Chapter 7 Trustee bases her claims against UConn on 11 U.S.C. §§ 548(a)(1)(B), 550, and 551. Noticeably absent in the Chapter 7 Trustee's Complaint is any claim under 11 U.S.C. § 549 to avoid the Debtor Husband's Post-Petition Payments. UConn seeks summary judgment on all claims.

UConn asserts two defenses in its Motion: 1) that Ali was the initial transferee of the tuition payments, and pursuant to 11 U.S.C. § 550(b)(1), UConn acted as Ali's immediate transferee when it received the tuition payments, which it took for value, in good faith, and without knowledge of the voidability of the transfers, and 2) that any tuition payments made on September 1, 2016 occurred post-petition. The Chapter 7 Trustee counters in her Memorandum of Law in Opposition to the Motion ("Opposition Memo," ECF No. 20) that UConn is an initial transferee because it exercised dominion and control over the monies once the Debtor Husband deposited them into Ali's Account. The Chapter 7 Trustee does not raise material issues of fact relating to the 11 U.S.C. § 550(b)(1) good faith defense.

After reviewing the Motion, the parties' Local Rule 56(a) Statements, the Opposition Memo, UConn's Reply to the Opposition Memo (ECF No. 27), the Affidavit, and the Supplemental Affidavit, this Court finds and adjudges that: 1) UConn is both an initial transferee and an immediate transferee under 11 U.S.C. § 550(a), depending on the transfer date of the tuition payments; 2) UConn has established the elements of a good faith defense under 11 U.S.C.

§ 550(b)(1) as an immediate transferee; and 3) the Post-Petition Payments are not avoidable or recoverable under 11 U.S.C. §§ 548 or 550.

      C. Payment Timing Determines UConn's Status as an Initial Transferee or Immediate Transferee of Such Initial Transferee.

To determine the status of an initial transferee, the Second Circuit has adopted the "mere conduit" test in *Christy v. Alexander & Alexander of N.Y. Inc. (In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey)*, 130 F.3d 52, 58 (2d Cir. 1997). To qualify as an initial transferee, "the minimum requirement . . . is dominion over the money or other asset, the right to put the money to one's own purposes." *Id.* at 57 (citation omitted). "[A] commercial entity that, in the ordinary course of its business, acts as a mere conduit for funds and performs that role consistent with its contractual undertaking in respect of the challenged transaction, is not an initial transferee within the meaning of § 550(a)(1)." *Id.* at 59. A trustee may recover the value of property transferred and avoidable under 11 U.S.C. § 548 from either the initial transferee of the property or the immediate transferee of such initial transferee. 11 U.S.C. § 550(a).

Under applicable law, by their nature, form, and substance, the Refundable Payments for tuition and fees do not constitute recoverable transfers of property as defined under 11 U.S.C. § 550. The recent decision by Chief Judge Carla E. Craig in *Pergament v. Hofstra Univ. (In re Adamo)*, 582 B.R. 267 (Bankr. E.D.N.Y. 2018), *vacated and remanded on other grounds sub nom. Pergament v. Brooklyn Law Sch.*, No. 1:18-CV-2204 (ARR), 2019 WL 111044 (E.D.N.Y. Jan. 4, 2019), is otherwise fully dipositive of this issue and supports the aforesaid finding. Although Chief Judge Craig's decision was vacated and remanded by the District Court for a factual issue regarding payment timing, the District Court otherwise upheld her reasoning as sound and agreed with her legal conclusion. *See Pergament v. Brooklyn Law Sch.*, 2019 WL 111044, at *1, *10. This

7

Court expressly adopts the reasoning of these two decisions, as applied below, as determinative of this Motion.

Although the Refundable Payments here were placed in an account maintained by UConn, they were ultimately property of Ali, and UConn did not immediately have the right to use the Refundable Payments for its own purposes. UConn essentially acted as a financial institution or intermediary by maintaining the Online Portal, which is akin to a financial institution maintaining a bank account. *In re Adamo*, 582 B.R. at 276. Under this arrangement, Ali was the initial transferee, and UConn served as a mere conduit who did not have dominion and control over the Refundable Payments until only thereafter accepting the tuition payments, as an immediate transferee, once Ali enrolled. The same however cannot be said for UConn's treatment of the Nonrefundable Payments.

Here, timing is everything. This Court appreciates the meticulousness required to uncover the factual timeline, as emphasized by the District Court in *Pergament v. Brooklyn Law Sch.*, 2019 WL 111044, at *9. "Once the deadline to withdraw from school had passed, the schools were actually owed tuition—they were creditors. That neither the schools nor the debtor's children were creditors *of the debtor* is irrelevant." *Id.* At the point UConn no longer had any obligation to refund the payments to Ali, it exercised complete dominion and control over the nonrefundable portion of the Debtors' payments. The timing and nature of the Debtor's Nonrefundable Payments to the Account qualified UConn as an initial transferee. *See, e.g., Authentic Fitness Corp. v. Dobbs Temp. Help Servs., Inc. (In re Warnaco Grp., Inc.)*, No. 01 B 41643(RLB), 2006 WL 278152, at *7 (S.D.N.Y. Feb. 2, 2006) (holding that receiving reimbursement for payments makes a company an initial transferee because it was "a creditor and not a conduit"). As such, the Chapter 7 Trustee

8

may be able to make a valid claim under the Bankruptcy Code with respect to the Nonrefundable Payments, subject to any defenses.

    D. Initial Transferees and Immediate Transferees of Such Initial Transferees May Present Defenses Under the Bankruptcy Code.

        *i. Immediate Transferees' Protection Under 11 U.S.C. § 550(b)(1)*

Under 11 U.S.C. § 550(b)(1), a trustee is prohibited from recovering from an immediate transferee of an initial transferee who "takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided[.]" This is a three-part test. The "good faith" prong is uncontested here, and the "without knowledge" component was ostensibly conceded by the Chapter 7 Trustee when she agreed that UConn only learned about the payments being in dispute in February 2017, well after UConn received the Refundable Payments in satisfaction of Ali's tuition obligations.

As for the "for value" piece, the Chapter 7 Trustee does not dispute that UConn provided value to Ali in exchange for the Refundable Payments. She also does not make any arguments that the Debtors must be the parties to receive value, and even if she did, the case law does not support such an outcome. As Chief Judge Craig laid out in her decision in *In re Adamo*, "[t]he statute does not say 'value to the debtor'; it says 'value'. . . . All of the courts that have considered this question have held or implied that value to the transferor is sufficient." 582 B.R. at 276 (quoting *Bonded Fin. Servs., Inc. v. Eur. Am. Bank*, 838 F.2d 890, 897 (7th Cir. 1988)).

Because there is no material dispute that UConn received the Refundable Payments in good faith, for value, and without knowledge, the Chapter 7 Trustee cannot demonstrate the requisite facts to support her claims under 11 U.S.C. §§ 548 and 550 regarding the Refundable Payments.

>    ii. *Initial Transferees' Protections Under 11 U.S.C. § 548*

Initial transferees are strictly liable under the Bankruptcy Code, unless other defenses can be interposed. *Carroll v. Tese-Milner (In re Red Dot Scenic, Inc.)*, 351 F.3d 57, 58 (2d Cir. 2003). In its Motion, UConn expressly reserved its rights to assert defenses under 11 U.S.C. § 548. As UConn asserted in its Answer, a transfer may give UConn a lien where it can show that the transfer was taken "for value and in good faith[.]" 11 U.S.C. § 548(c). UConn also deliberately chose not to raise an argument over reasonably equivalent value under 11 U.S.C. § 548(a)(1)(B)(i) in this Motion. Therefore, at this juncture, a genuine issue of material fact remains on the avoidability of the Nonrefundable Payments, subject to other defenses that UConn may still raise regarding its status as an initial transferee. Accordingly, summary judgment may not enter as to the Nonrefundable Payments.

E. Post-Petition Payments are Not Subject to Avoidance Under 11 U.S.C. § 548.

Lastly, the Chapter 7 Trustee concedes that the Post-Petition Payments occurred after the Petition Date. Nowhere in her Opposition Memo does she assert that the Post-Petition Payments are avoidable under 11 U.S.C. § 548, or otherwise. Thus, the Court grants summary judgment to UConn on the Post-Petition Payments because these transfers, by definition, are not subject to avoidance under 11 U.S.C. § 548. *In re Knight*, 2017 WL 4410455, at *2 ("Regardless of whether the material facts are undisputed, however, 'the court must determine whether the legal theory of the motion is sound.'") (quoting *Jackson v. Fed. Exp.*, 766 F.3d 189, 194 (2d Cir. 2014)).

V. CONCLUSION

For the foregoing reasons, UConn's Motion is **GRANTED**, as it pertains to the Refundable Payments and Post-Petition Payments and **DENIED**, as it pertains to the Nonrefundable Payments because genuine issues of material fact exist.

The parties should consider whether supplemental summary judgment motions or a trial upon stipulated facts best addresses the remaining issue to be tried. The parties are directed to confer regarding the terms of a final pre-trial order, and the Clerk of Court shall schedule a status conference in February 2019 for the Court to consider the terms of the parties' proposed pre-trial order.

**IT IS SO ORDERED** at Hartford, Connecticut this 31st day of January 2019.

*James J. Tancredi*
United States Bankruptcy Judge
District of Connecticut